IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CARLO W. OBREGON
and SAMUEL WATERS                                              PLAINTIFFS

v.                        No. 3:17-cv-156-DPM

CAPITAL QUARRIES COMPANY, INC.,
owned or held by Farmer Holding
Company, Inc.                                                  DEFENDANT

## ORDER

**Background.** Obregon and Waters worked at a Capital Quarries mine near Pocahantas. Obregon was there for several years, Waters a few months. The company fired Obregon based on two days in a row of safety violations. It fired Waters based on a safety violation and an unexcused absence. The former employees say they were set up. Obregon is Hispanic, a naturalized citizen. Waters is Caucasian. Both sought Saturdays off to keep the Sabbath. Obregon claims he faced a hostile work environment because of his national origin and request for religious accommodation. Waters claims he was targeted for supporting his co-worker on the Sabbath-keeping. Obregon also says he was paid less than Waters and others for equal work. According to Obregon, supervisor Jesse Doran led co-workers in the campaign of hostility. Waters faults Doran, too. Capital Quarries seeks summary judgment, while the former employees say genuine disputes of material

fact require a jury trial. The Court takes the record where genuinely disputed in the light most favorable to Obregon and Waters, drawing all reasonable inferences in their favor. *Oglesby v. Lesan*, 929 F.3d 526, 531–32 (8th Cir. 2019).

**Constitutional claims.** Obregon's and Waters's constitutional claims fail. Capital Quarries isn't a state actor, and they haven't shown any joint activity between it and any state actors. *Magee v. Trustees of Hamline University, Minnesota*, 747 F.3d 532, 536 (8th Cir. 2014).

**Unequal pay.** Obregon's Equal Pay Act claim fails because he's not claiming wage discrimination on the basis of sex. 29 U.S.C. § 206(d).

**Religious accommodation.** Obregon says he asked in February 2016 not to work on Saturdays, as required by his religion. The company has no record or recall of his request at that time; Obregon doesn't have any record of it either. But Obregon and Capital Quarries agree he made the same request in September 2016 and they discussed it. Around that time, Obregon filed an EEOC charge claiming Capital Quarries had denied him a religious accommodation. Before getting notice of that charge, the company wrote Obregon a letter saying he couldn't have every Saturday off, given the number of staff on hand and the level of production required. Instead, the company offered him every other Saturday off, and it gave him the overall work schedule so he could ask others to step in for him voluntarily on his assigned Saturdays. Obregon acknowledges he

didn't work any Saturdays for almost two years, between late September 2016 and early August 2018, when Waters was hired. *№ 46-1 at 19; № 59 at 3; № 48-1 at 12.* Between then and when he was fired in December 2018, Obregon says he worked some Saturdays. Capital Quarries, however, says he didn't work any Saturdays at least through 6 October 2018.

The parties do not focus on accommodation of Waters. The basic facts are these. About two months after he started, a truck Waters was driving malfunctioned; in response, supervisor Doran yelled and threw his hard hat at Waters. *№ 57-10 at 1; № 48-1 at 82–84; № 59 at 9.* Soon afterwards, Waters asked to have Saturdays off for religious reasons. At his deposition, Waters said another reason he made the request was to spend less time with Doran. *№ 48-1 at 65–66.* And he said that before the yelling incident, working on Saturdays "wasn't ever an issue." *№ 48-1 at 65.* The company responded to Waters's request like it did with Obregon: every other Saturday off, and the schedule for possible substitutions. *№ 48-1 at 182.* Waters worked the first two Saturdays after his request because the company said it needed time to consider and respond to it. *№ 48-1 at 182.* The record doesn't show how many other Saturdays, if any, Waters worked thereafter; about two months' worth are in question. Waters couldn't remember how many Saturdays he worked after he made his request. *№ 48-1 at 65.*

The law obligated Capital Quarries to reasonably accommodate Obregon's and Waters's sincere religious beliefs unless it could show that doing so would impose an undue hardship on the company. *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011). Obregon ended up having almost all Saturdays off after his firm accommodation request. Capital Quarries provided him a path to do so. On this record, there's no genuine factual dispute for trial as to whether the company reasonably accommodated Obregon's beliefs. It did, as a matter of law.

As for Waters, the company also responded to his request and articulated a reasoned basis for its proposed accommodation. It didn't give Waters every Saturday off because it said only he and Obregon were assigned a certain truck driving role, and Obregon had already requested every other Saturday off. № 48-1 at 182. At his deposition, Waters questioned this reasoning. He mentioned unnamed employees who didn't work Saturdays despite being "just as qualified" to drive the truck as he and Obregon were. № 48-1 at 67, 69. Waters agreed that he and Obregon were the two employees who primarily drove the dump truck. № 48-1 at 31.

Waters hasn't presented sufficient evidence to support a verdict that Capital Quarries's proposed accommodation was unreasonable. Capital Quarries wasn't required to give Waters exactly what he asked for. Instead, the law required the company to make serious efforts to accommodate him. *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024,

1033 (8th Cir. 2008). Its consistent responses to Obregon's and Waters's requests indicate a serious effort. Also, having workers swap days can be a reasonable accommodation. *Sturgill*, 512 F.3d at 1032. The governing law requires cooperation from both sides. *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977). There's some murkiness, but no genuine factual dispute for trial on this issue as to Waters. *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018).

**Discrimination.** Obregon claims Capital Quarries discriminated against him because of his religion and national origin. He was suspended for three days for mishandling a loading truck; suspended for one day for violating a rule about cell phone usage; and he received a warning for insubordination also related to cell phone use. Even if he's made a *prima facie* showing, Obregon's Title VII discrimination claim fails at the pretext stage. Capital Quarries had legitimate, non-discriminatory reasons for the discipline. Obregon hasn't provided adequate comparators, shifting rationales by Capital Quarries, or other evidence showing that the company's stated reasons were a pretext for discrimination. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (*en banc*). At the pretext stage, the test for being similarly situated is rigorous. Obregon must point to employees outside his protected group who dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.

*Johnson*, 769 F.3d at 613. Obregon hasn't satisfied this rigorous standard. His photos of alleged violations don't show anyone mishandling a loading truck or improperly using cell phones the way Obregon did. № 57-5 at 72–82; № 58 at 13–14; № 49-1 at 36–40.

Waters claims discrimination based on his religion and association with Obregon. Capital Quarries suspended him because of an unexcused absence—another non-discriminatory reason. His claim fails for lack of a comparator or other evidence showing the company's reason was pretextual.

Obregon's and Waters's discrimination claims under § 1981 fail for the same reasons their Title VII claims fail. *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009).

**Retaliation.** Waters claims his suspension amounted to retaliation. The Pocahontas site supervisor, Doran, suspended Waters for missing work without giving advance notice. Waters says he didn't go to work that day because, the day before, Doran had cussed him out and threw his hard hat at him after a truck Waters was driving malfunctioned. Waters reported Doran's behavior to Capital Quarries's human resources department. Waters claims Doran suspended him in retaliation both for Waters's association with Obregon and for Waters's having reported Doran. As with his discrimination claim, Waters's retaliation claim fails because Doran had a legitimate reason for suspending Waters, and Waters hasn't provided

any comparator or other evidence that his suspension was a pretext for retaliation. *Lacey v. Norac, Inc.*, 932 F.3d 657, 660 (8th Cir. 2019). Waters hasn't shown, for example, that Capital Quarries was more lenient with some other new employee who missed work without giving advance notice.

Both Obregon and Waters claim Capital Quarries fired them in retaliation for their EEOC charges against the company and for Obregon's having filed this lawsuit. In its termination letters to the two men, Capital Quarries said it fired Waters because of his suspension and a safety violation, and it fired Obregon because of the same safety violation plus another one. Whenever Capital Quarries workers repair equipment, they have to make sure its power source is disconnected and then "tag out" that piece of equipment, so no one else can operate it. № 57-5 at 6. Doran said Obregon failed to follow this procedure two days in a row. On each day, Obregon was repairing a rock crusher. Waters worked with Obregon on the first day's repair; Doran says Waters also violated the safety protocol. Obregon and Waters respond that they followed others in terms of which circuit breaker to tag out, and they weren't allowed to try turning on machines to make sure they were off. Assuming the truth of those explanations, a reasonable inference that Doran had a retaliatory motive when he reported Obregon and Waters does not necessarily arise. *Lacey*, 932 F.3d at 660. Even if Doran was gunning for Obregon and Waters, he didn't decide

to fire these men. Capital Quarries did an independent investigation into Obregon's and Waters's safety violations. There is, therefore, no concern that management was a cat's paw for Doran. *Lacks v. Ferguson Reorganized School District R-2*, 147 F.3d 718, 725 (8th Cir. 1998). As for the alleged violations in Obregon's photos, they aren't adequate comparisons because they don't show employees violating the tag-out procedure. *Johnson*, 769 F.3d at 613.

**Hostile work environment.** Obregon and Waters each allege that Doran and other employees targeted them with derogatory, offensive, and abusive language. For instance, Obregon says he was called a chihuahua and the n-word, and that someone told him to speak English. Obregon also claims he was falsely accused of sexual harassment. Waters says Doran yelled at him and that others mocked him because of his friendship with Obregon. But these and other statements and actions were not pervasive or severe enough to create an objectively hostile or abusive workplace. The precedent is strict. *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 922–23 (8th Cir. 2018).

**State law claims.** Having resolved all of Obregon's and Waters's federal claims, the Court declines to exercise supplemental jurisdiction over their state claims. 28 U.S.C. § 1367(c)(3); *Zubrod v. Hoch*, 907 F.3d 568, 580–81 (8th Cir. 2018).

* * *

Capital Quarries's second motion for summary judgment, № 43, is granted, with a carve out on the state law claims. Its motion to exclude, № 61, is denied as moot.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

*20 December 2019*